By the Court.—Sed&wick, J.
The exceptions have been argued very thoroughly and ably. They are too numerous for examination individually; the merits of them all may be determined by reference to general propositions, which will be applicable to classes into which the exceptions may be divided.
There were exceptions that depended for validity upon the proposition that the complaint alleged that the conductor of defendant’s car willfully or intentionally struck the plaintiff. The allegation adverted to occurs in this part of the complaint, namely, that the plaintiff “ was in the act of getting off of the rear platform thereof, when by and through the negligence and want of proper care and attention on the part of the said defendant, by its said servants, the said car was suddenly started, and the said conductor struck this plaintiff on the shoulder, and she was thereby, through such negligence and carelessness on the part of said conductor, violently thrown to the ground,” &c. At the least, there is no allegation as to the quality of the conductor’s act in striking. It is clear that the complaint claims nothing through any willful act, for the only damage that is alleged, is stated to be through “ such negligence or carelessness of the conductor,” and immediately before this is the allegation as to the blow struck by the conductor.
Another class of exceptions involved the proposition that the proof showed that the blow struck by the conductor was malicious, so that his employer, the defendant, would not be liable for it and its consequences. I do not find, in the testimony offered by plaintiff, any facts that would have allowed the jury to find that, what was called the blow, was malicious. The witnesses and the complaint used the words, “ blow” and “ struck,” in reference to the act of the conductor that is now referred to. These words were chosen, perhaps, because it was difficult to find more appropriate single *464 words to describe a thrusting out of the arm of the conductor to take hold of plaintiff, the result being that the hand went against plaintiff and did not grasp her. The plaintiff did not mean to, and did not describe a malicious blow. None of her testimony was at variance with her answers to certain questions by defendant’s counsel. , For example : “ Q. Did he strike yon ? A. He struck me with his hand. Q. What did he strike you for \ A. He wanted to hold me, I suppose.” Beyond this, the defendant offered testimony on this point from the conductor himself. On direct examination, he said, “ I caught hold of her to prevent her from getting off before the car came to a stand-still, she gave a twist out of my grasp, and fell into the street; I did all I could to prevent her from getting off the car while it was in motion.” This being the evidence, neither the court nor the jury would have been justified in finding that there was malice on the part of the conductor.
Other exceptions were presented, on the hypothesis that the jury might be at liberty to find that the ringing of the bell, which started the car ahead, and which, according to plaintiff’s case, was the first cause of plaintiff’s falling from the platform, was a malicious act by the conductor. This certainly was not incontrovertibly proved, and the defendants were prevented from claiming that' it was the fact, after the evidence of their witness, the conductor, that has already been given, viz., in substance, that what he did, he did without malice. He denies ringing the bell to start the car ahead, but he says that, as plaintiff was about to get off the platform, he did all he could to prevent her. This necessarily implies that he- had no malice, for it is inconsistent with ringing the bell for the purpose of injuring plaintiff.
If the starting ahead of the car was not a malicious act of the conductor, there is no ground for an argu *465 ment that it was not in the scope of the conductor’s employment as servant of defendants.
Other exceptions rested upon the proposition that, if the plaintiff was injured by the conductor’s effort to save her, or was by such effort injured more than she would have been without it, either the company was not liable at all, or only for what injury or damage was not caused by that act.
These propositions imply that before the effort to save her, the plaintiff was in a dangerous position, that the conductor thought called for interposition by him. The jury have found, on sufficient evidence, that the danger of the plaintiff was caused by the defendant’s negligence. In Sheridan v. Brooklyn City & N. R. R. Co. (36 N. Y. 39), the plaintiff’s intestate, who was a child, had gone upon the front platform properly, so far as the defendants were concerned, and by the express requirement of the defendant. While he was on the platform, another passenger rushed, for the purpose of getting off the car, against the boy, and impelled him Irrom the car. The consequence was the boy’s falling on the ground, and receiving fatal hurt. These facts showed that there was no evidence that the boy would have fallen on the ground, or have been at all damaged, if the other passenger had not pushed him. The court of appeals held, that it was the concurrence of the defendant’s illegal conduct; in placing the deceased upon the platform, with the violence of the other passenger, “that produced the disastrous result. It is no justification for the defendant that another party, a stranger, was also in the wrong.” It will be perceived that in the cited case, there was far more reason than exists in the present case, for asserting that, apart from the consequences of the intervening act, no damage ensued from the negligence of the defendant. Another pertinent consideration is that, if the intervening act was *466 meant to prevent the consequences of defendant’s negligence, there is more reason for making defendant liable for all the consequences, than if, as in the cited case, the act was a substantive tort, if it were necessary to pass upon the point, it should be held, in my judgment, that the intervening act of the conductor, if it were performed in order to prevent the plaintiff falling from the car, was within the scope of his employment. Irrespective of this, the case cited makes, as the answer to the proposition, that defendant would be liable for all the injuries, though it might be that part of the damage came from the effort to save, causing a heavier fall, provided the injuries would not have happened, it it.had not been for defendant’s negligence. If you can segregate the consequences of the conductor’s intervening act, it is still true that they would not have occurred, if there had been no prior negligence on defendant’s part. It may be noticed that, in a true sense, the act of starting the car ahead, and the act of trying to prevent the consequences, were parts of one act by the conductor. The principles adverted to are sustained directly or indirectly by Chapman v. New Haven R. R. Co. (19 N. Y. 341); Barrett v. Third Ave. R. R. Co. (45 Id. 628); Pollett v. Long (56 Id. 201) ; Slater v. Mersereau (64 Id. 138); Sauter v. N. Y. C. & H. R. R. (66 Id. 510).
The court, at request of defendant’s counsel, charged the jury that, “n.o liability results from the commission of an act arising from inevitable accident, or which ordinary human care and foresight could.not guard against.” The court added, 1 ‘ I leave it for you to say whether this was an inevitable accident or not, i. e., whether the company could not have prevented the accident.” It is argued that the last remark was erroneous, because it led the jury to believe that if the company could in any way have prevented the accident, for example, by the use of a greater degree of diligence than the law *467 required, they would still be liable. I do not think that the jury could suppose that the court meant to-charge this. The remark of the court was an explanation of a preceding phrase in the request, “ inevitable accident.” It was intended to refer only to those facts which might make such an accident. It gave a correct definition of inevitable. If the so-called accident was evitable, which it would be if the company could prevent it, the defendant would not be absolved! thereby from responsibility. What degree of care the-company was called upon to use, within its power of prevention, was not alluded to by the request, nor by the counsel. The eleventh request, which the court refused to charge, did not add anything substantial to the contents of the tenth request, which was charged.. The court charged distinctly, at other times, although in other forms, that if the company were free from, blame, they were not liable.
Other exceptions were grounded upon testimony given by a physician, who had attended the plaintiff, and who had testified that the plaintiff had suffered certain injuries, that he described. The question was put by her counsel: “Q. What is the nature of such, an injury, as to its permanency—its character % A. It will probably exist all her life-time.” The question, was objected to. Motions, were made to expunge it,, and the court was asked to direct the jury to disregard, it. The court did charge, that the damages in the future, for which compensation might be assessed, must be such as it was reasonably certain would inevitably result from the injury, but refused to charge that on this point the jury were not at liberty to consider the-evidence from the physician.
In the case relied on by the learned counsel for appellant : Curtis v. Rochester & S. R. R. Co. (18 N. Y. 534), Judge Selden (p. 542) held that the charge of the judge at the trial, taken together, was correct. He was, *468 of the opinion that the charge would be incorrect, if it were confined to the part where it was charged that the jury might consider the “bodily pain and suffering, which the plaintiff was likely to suffer, in consequence of the neglect of the defendant;” but that a modification that was made corrected the error. The modification was that future damages could only be awarded “when it is rendered reasonably certain from the evidence, that such damages will inevitably and necessarily' result from the original injury.” It is clear that the charge went further than was necessary for the protection of defendant, in so far as the terms inevitably and necessarily might be deemed to import more of future certainty than is conveyed by the term “reasonably certain.” Judge Selden held, as to damages, that none could be allowed, except such as are shown by the proof to be, at least to a reasonable ■ degree, certain. As we have said, he did not think that this was charged by referring to pain and suffering which the plaintiff was likely to suffer. The objection was that it allowed damages which were rendered probable only.
The nature of the subject-matter must be considered. An event of the kind in view, cannot be proved to be absolutely certain of occurrence in the future. Whether or not it will occur, depends upon the estimation of certain probabilities as to the future. There may be, and generally are, probabilities against probabilities, and some single probabilities have more weight than others. If the conclusion be that it is reasonably certain that the event will happen, it' is' reached after weighing probabilities, and the judgment is, that after looking at the probabilities for and against, there remains a conclusion that the mind does not doubt that the event will occur, and in view of all things, does not feel called upon to hesitate in pronouncing that it will occur.
In the present case, the evidence of the physician *469 was relevant to the reasonable certainty of the future events. -It specifically referred to probabilities, which, the jury were obliged to consider. There was nothing in his evidence which showed that the probability he referred to, and intended to describe, was not such an one as would satisfy the jury as to what was reasonably certain to happen. If the jury could not rightfully draw the conclusion from his testimony alone, there were other facts in the case, viz.: the plaintiff, her appearance, her wounds, and such things connected with them, as common men, without help of experts, might appreciate, which the jury were bound to consider on the point of reasonable certainty.
I understand that the objection of the case last cited, to damages that are “only likely” or “only probable,” is confined really to evidence as to probability, that may leave the mind in doubt or uncertainty. I am, therefore, of opinion that the plaintiff was entitled to a submission of the testimony to the jury.
There was nothing in the allusion to the facts of the case, made by the judge in his charge, which withdrew, or was likely to withdraw the attention of the jury from the facts in evidence, that were not detailed by him. At the time, he specifically instructed the jury to consider the whole evidence.
As to the reasons urged for a new trial upon the case, including the amount of damages, there is none which would justify granting a new trial.
Judgment affirmed, with costs, and order denying motion for new trial, made upon the case, affirmed with costs.
Speir and Freedman, JJ., concurred.